**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
DEBORAH MOSLEY,       :

       Plaintiff,  :

    -against-    :    20-CV-7940 (OTW)

           :

           :    **OPINION & ORDER**

           :

COMMISSIONER OF SOCIAL SECURITY, :

       Defendant. :

           :

           :
-------------------------------------------------------------x

   **ONA T. WANG, United States Magistrate Judge:**

I.  <u>**Introduction**</u>

   On November 14, 2016, Plaintiff filed concurrent Title II and Title XVI applications for

disability and disability insurance benefits and supplemental security income. (Administrative

Record, ECF 7 (hereinafter "R.") at 11). Plaintiff's alleged onset date ("AOD") is April 18, 2016.

(ECF 26 at 1). After her claims were initially denied, Plaintiff appeared with counsel on

September 13, 2018, at a hearing before Administrative Law Judge (hereinafter "ALJ") Dina R.

Loewy (R. 45-72) and was denied benefits on June 4, 2019. (R. 8-10). The Appeals Council

denied Plaintiff's request for review on August 4, 2020. (R. 1).

   The ALJ found that Plaintiff had a limited education and former relevant work as a

parking attendant, that Plaintiff had not engaged in substantial gainful activity since the alleged

onset date, and that Plaintiff had mood disorder, Post Traumatic Stress Disorder ("PTSD"),

depression, and anxiety. (ECF 26 at 1). The ALJ found that Plaintiff did not meet the paragraph

"B" criteria of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1, but had moderate

limitations in all four paragraph "B" criteria. (ECF 26 at 1-2). The ALJ found Plaintiff's residual

function capacity ("RFC") was that she could do work at all exertional levels, limited to simple,

routine repetitive tasks, a low stress environment, with only occasional decision-making or

changes in work setting, no interaction with the public and only occasional interaction with

supervisors and co-workers, no fast-paced production requirements or conveyor belt work, and

no concentrated exposure to hazardous machinery or unprotected heights. (ECF 26 at 2).

Finally, the ALJ found Plaintiff was incapable of performing her former work as a parking

attendant but could perform other work that existed in significant numbers in the national

economy. (ECF 26 at 2).

This case is before me on consent of the parties, pursuant to 28 U.S.C. § 636(c). (ECF 16).

For the reasons below, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, and the

Commissioner's Cross Motion for Judgment on the Pleadings is **DENIED**. The case is remanded

for further proceedings pursuant to 42 U.S.C. § 405(g).

## II.   Background

### A.   Plaintiff's Testimony and Physicians

Plaintiff testified that she stopped working because she became scared, jittery, and

could not focus. (ECF 26 at 2).  She lost track of tasks, would forget to take her medicine, and

would forget her appointments and calls. (ECF 26 at 2-3). Plaintiff testified that she would

experience panic attacks "out of nowhere", though in particular her panic attacks were

triggered by riding in cars, crossing big streets, people fighting, and crowded places. (ECF 26 at

3-4). During panic attacks, she could not breathe, and experienced fear, confusion, rapid

heartbeat, and shortness of breath. (ECF 26 at 3-4). She could only travel by bus, attended

doctor appointments nearby, avoided supermarkets, disliked having conversations with others,

and avoided socialization. (ECF 26 at 3). Plaintiff reported her mood would go down one to two

times a month, she had no energy, and she had trouble sleeping. (ECF 26 at 3-4).

*i.   Maritza Casillas, L.C.S.W.*

Plaintiff was first treated by Maritza Casillas, L.C.S.W., who treated her for Generalized

Anxiety Disorder and stated that she could not work, be in overcrowded places, nor wait an

extended amount of time due to her panic attacks. (ECF 26 at 4).

*ii.   Lucy Kim, Psy.D.*

Lucy Kim, Psy.D., conducted a consultative examination and found Plaintiff had mild

limitations in maintaining attention and concentration, but no limitations in following and

understanding simple directions and instructions, performing simple tasks independently, being

able to maintain a regular schedule, learning new tasks, performing complex tasks

independently, making appropriate decisions, relating adequately to others, and dealing

appropriately with stress. (ECF 26 at 5). Dr. Kim concluded that Plaintiff did not demonstrate a

psychiatric or cognitive problem that would significantly interfere with Plaintiff's ability to

function on a daily basis. (ECF 26 at 5).

*iii.   T. Harding, Ph.D*

T. Harding, Ph.D, a state agency psychologist, found, upon review of the record, that

Plaintiff had anxiety and depressive disorders, but that they were only mild—thus non-severe

limitations—and Plaintiff was able to perform activities of daily living and travel independently

via public transportation. (ECF 26 at 5).

iv.     *Erin Goss, M.D.*

Erin Goss, M.D., a treating physician at Montefiore Comprehensive Health Care Center, found Plaintiff had a history of chronic depression and anxiety and a PHQ-9 score of 13 and a GAD-7 score of 14 which indicated moderate depression and anxiety. (ECF 26 at 5-6). Dr. Goss found Plaintiff was unable to be in crowded spaces, perform work that is stressful, or travel in a car or public transportation due to agoraphobia and claustrophobia, concluding that Plaintiff was unable to work. (ECF 26 at 6). Plaintiff's medications were adjusted on April 17, 2017, which helped with her sleep and appetite. (ECF 26 at 7). Dr. Goss noted Plaintiff's conditions were stable, though she remained disabled and with a poor prognosis for sustained recovery. (ECF 26 at 7).

v.     *Elizabeth Chapman, M.D.*

Elizabeth Chapman, M.D., a psychiatrist at Montefiore Comprehensive Health Care Center, diagnosed Plaintiff with PTSD and Major Depressive Disorder. (ECF 26 at 6-7). Plaintiff's symptoms included fatigue, anhedonia, social withdrawal, feeling overwhelmed by even simple tasks, and limitations in her ability to travel outside the home, attend appointments, and attend to self-care. (ECF 26 at 7). Dr. Chapman found Plaintiff incapable of managing daily routine or employment, or significant travel outside her home. (ECF 26 at 7).

After Plaintiff's mediations were adjusted on April 17, 2017, Dr. Chapman changed Plaintiff's depression to mild depression and mild anxiety, though her prognosis was guarded due to a high PTSD symptom burden. (ECF 26 at 7). Dr. Goss reported that Plaintiff's depressive symptoms improved. (ECF 26 at 9). Dr. Goss continued treatment for hypertension and

psychiatric evaluations. (ECF 26 at 10). Dr. Goss found Plaintiff was unable to ride the train or use public transportation. (ECF 26 at 10).

### vi.   *Michael Dowling, M.D.*

Michael Dowling, M.D., a treating physician at Montefiore Comprehensive Health Care Center, submitted a letter stating Plaintiff had diagnoses of Anxiety and Depression. (ECF 26 at 6). Dr. Dowling stated that Plaintiff experiences significant anxiety and shakiness when outside, crossing the street, or traveling in a fast car. (ECF 26 at 6). Dr. Dowling stated Plaintiff experienced significant Anxiety around others, and could not tolerate crowded places, public transportation, or perform stressful work because of agoraphobia and claustrophobia. (ECF 26 at 6).

### vii.   *Babe Garais, M.D*

Babe Garais, M.D, conducted mental health treatment of Plaintiff through FEDCAP Behavioral Health Services. (ECF 26 at 9).  FEDCAP providers noted Plaintiff was unable to travel on public transportation and struggled to leave her home, then became able to perform activities of daily living, though Plaintiff reported sadness and difficulty concentrating. (ECF 26 at 11).

### III.   Analysis

#### B.   Determination of Disability

To be awarded disability benefits, the Social Security Act requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §

423(d)(1)(A); 20 C.F.R. § 416.905(a). The ALJ makes this determination through a five-step

evaluation process, for which the burden rests on the Plaintiff for the first four steps and only

after all four steps are satisfied does the burden then shift to the Commissioner for the final

step. 20 C.F.R. § 416.920.

First, the ALJ must determine that Plaintiff is not currently engaged in substantial gainful

activity. 20 C.F.R. § 416.920. Second, the ALJ must find that Plaintiff's impairment is so severe

that it limits her ability to perform basic work activities. 20 C.F.R. § 416.920. Third, the ALJ must

evaluate whether Plaintiff's impairment falls under one of the impairment listings in 20 C.F.R.

Pt. 404, Subpart P, Appendix 1, such that she may be presumed to be disabled. 20 C.F.R. §

416.920. Fourth, if Plaintiff's impairment is not listed and is not equal to one of the listed

impairments, the ALJ must determine Plaintiff's RFC, which is her ability to perform physical

and mental work activities on a sustained basis. 20 C.F.R. § 416.920. The ALJ then evaluates

whether Plaintiff's RFC precludes her from meeting the physical and mental demands of her

prior employment. 20 C.F.R. § 416.920. If Plaintiff has satisfied all four of these steps, the

burden then shifts to the Commissioner to prove that based on Plaintiff's RFC, age, education,

and past work experience, Plaintiff is capable of performing other work that exists in the

national economy. 20 C.F.R. § 416.920.

    C.  <u>The ALJ's Decision</u>

The ALJ found that at step three, Plaintiff did not have an impairment or a combination

of impairments that met or medically equaled the severity of one of the listed impairments in

20 CFR Part 404, Suppart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 516.920(d),

416.925, and 416.926). (R. 14). Accordingly, the ALJ next assessed Plaintiff's RFC under step

four. 20 C.F.R. § 416.920. The ALJ found, "after careful consideration of the entire record," that Plaintiff had the RFC to perform a full range of work at all exertional levels, with some exceptions.[1]

In finding Plaintiff had the RFC to perform work under step four, the ALJ utilized a two-step process to determine whether there was an underlying medically determinable physical or mental impairment which could reasonably be expected to produce the Plaintiff's symptoms, and whether the intensity, persistence, and limiting effects of the symptoms could be shown to functionally limit the Plaintiff's ability to do work-related activities. (R. 16). The ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms," but her "statements concerning intensity, persistence and limiting effects of these symptoms [were] not entirely consistent with the medical evidence." (R. 17). The ALJ acknowledged that Plaintiff presented to medical providers with reports of depressed and anxious mood but noted that they were only moderate in nature. (R. 17). The ALJ noted that Plaintiff reported improved symptoms and sleep since taking a new medication. (R. 17). The ALJ concluded that Plaintiff's statements regarding the intensity, persistence, and limiting effects of her symptoms were not supported by the objective medical evidence, citing Plaintiff's moderate depression and anxiety scores on PHQ9 and GAD 7 testing. (R. 17).

The ALJ gave all of Plaintiff's treating physicians—Elizabeth Chapman, M.D.; Erin Goss, M.D.; Michael Dowling, Ph.D.; Maritza Casillas, L.C.S.W.; and Babe Garais, M.D.—little weight,

---

[1] "However, the claimant should avoid concentrated exposure to hazardous machinery and unprotected heights. From a mental standpoint, the claimant is limited to simple routine and repetitive tasks (SVP 1 or 2) with no conveyor belt work. The work should be in a low stress environment, which is defined as having only occasional decision making and occasional changes in the work setting. The claimant also cannot interact with the public, and the claimant is limited to occasional contact with supervisors and coworkers. The claimant further can only work in an environment free of fast-paced production requirements." (R.16).

stating that the medical professionals did not provide an "in-depth function-by-function analysis" of Plaintiff's abilities and limitations, and that their opinions were inconsistent with the overall evidence. (R. 19-20). The ALJ afforded significant weight to the consulting physician, Lucy Kim, Psy.D, and partial weight to state agency psychologist, T. Harding, Ph.D., who reviewed Plaintiff's records in part and did not conduct any evaluations of Plaintiff. (R. 18-19).

        *viii.*    *Treating Physician Rule*

The treating physician rule applies to claims filed before March 27, 2017. 20 C.F.R. §§ 404.1527, 416.927.[2] Plaintiff's claim was filed on November 14, 2016. (R.11). Accordingly, the treating physician rule applies to Plaintiff's claim. The treating physician rule requires an ALJ to weigh the opinions of a claimant's medical sources and give "controlling weight to a treating physician if those opinions [are] 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and [are] not inconsistent with other substantial evidence in [the] case record.'" *Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-0502 (AJN)(KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (quoting 20 C.F.R. § 404.1527(d)(2)). Under this rule, consultative and non-examining physicians are afforded lesser weight than a treating physician who is understood to have a more intimate understanding of the claimant's medical background. The treating physician rule "states that the claimant's treating physician's diagnoses and findings regarding the degree of claimant's impairment are binding on the ALJ unless there is substantial evidence to the contrary." *Arzuaga v. Bowen*, 833 F.2d 424, 426 (2d Cir. 1987).

---

[2] For claims filed on or after March 27, 2017, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c in lieu of applying the treating physician rule. *See, e.g.*, *Acosta Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (AJN) (KHP), 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021), *report and recommendation adopted sub nom. Cuevas v. Comm'r of Soc. Sec.*, 20-CV-0502 (KMW) (KHP), 2022 WL 717612 (S.D.N.Y. Mar. 10, 2022).

While an ALJ may decide to give less than controlling weight to a treating physician's opinion, if they do they must "comprehensively set forth [their] reasons for the weight assigned to a treating physician's opinion." *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004). In doing so, they must consider the factors listed under 20 C.F.R. §§ 404.1527(c)(2)(i), (ii) and 404.1527(c)(3)-(6), to determine how much weight to give to the opinion. 20 C.F.R. § 404.1527(c)(2). The factors, as explained by the Second Circuit in *Burgess*, are the "length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; the relevant evidence, particularly medical signs and laboratory findings, supporting the opinion; the consistency of the opinion with the record as a whole; and whether the physician is a specialist in the area covering the particular medical issues." *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (quoting C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5)) (internal quotations removed). The regulations specify that the Commissioner "will always give good reasons in [their] notice of determination or decision for the weight [they] give [claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). *See also Schaal v. Apfel*, 134 F.3d 496, 503-4 (2d Cir. 1998) (quoting 20 C.F.R. § 404.1527(c)(2)). The Court should "remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided good reasons for its weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019) (internal quotations removed).

D.   The ALJ Improperly Discounted the Treating Physicians' Medical Opinions.

The ALJ did not give controlling weight to the medical opinions of Plaintiff's treating physicians, stating that "the medical professionals did not provide any in-depth function-by-function analysis of the claimant's abilities and limitations and their opinions are inconsistent

with the overall evidence." (R. 20). The ALJ's explanation for failing to give the appropriate level of weight does not constitute "good reason" under the relevant factors, and remand is accordingly warranted.

Here, the ALJ discounted the opinions of Plaintiff's treating physicians for an improper reason. A "function-by-function" analysis is "not a factor under 20 C.F.R. § 404.1527(c)." *Rodriguez v. Colvin*, No. 15-CV- 297 (KPF), 2016 WL 1573464, at *13–15 (S.D.N.Y. Apr. 18, 2016). Further, since the ALJ did not evaluate each treating physician's opinion independently, it is "impossible" to determine which treating physician's opinion the ALJ referenced in order to conclude they were inconsistent with the overall evidence. *Agapito v. Colvin*, No. 12 CIV. 2108 (PAC) (HBP), 2014 WL 774689, at *18-19 (S.D.N.Y. Feb. 20, 2014) (remanding where the ALJ failed to differentiate between the treating physician's medical opinions). In making this blanket assessment, the ALJ failed to consider the frequency, length, nature, and extent of treatment, or whether any of the doctors were specialists. *See Martin v. Berryhill*, No. 17-CV-08640 (VSB) (SN), 2019 WL 1756434, at *4 (S.D.N.Y. Feb. 20, 2019), *R & R adopted*, No. 17-CV-8640 (VSB) (SN), 2019 WL 1755425 (S.D.N.Y. Apr. 19, 2019) (remanding where the ALJ failed to discuss the nature and extent of the treating physician's relationship with the Plaintiff).

Upon a comprehensive review of the record, the ALJ did not fully address the record when characterizing the treating physician's medical opinions as inconsistent. The ALJ claimed that the treating physicians' opinions were inconsistent with these "objective findings": Plaintiff presented normal psychomotor activity, logical thought processes, full concentration abilities, alert cognition, fair insight, unimpaired judgment, unimpaired impulse control, unimpaired recent memory, normal thought content and processes, fair insight, appropriate judgment,

intact remote and recent memory functioning, normal concentration, and normal attention span. (R. 19 (citing Exhibits 9F, 11F, and 13F)). Not only did the ALJ fail to articulate how these evaluations were actually inconsistent with the treating physician opinions, the ALJ did not address contemporaneous treatment notes in the same record that supported the opinions of the treating physicians.[3]

IV.   **Conclusion**

For the reasons stated above, Plaintiff's Motion for Judgment on the Pleadings is **GRANTED**, the Commissioner's Cross-Motion for Judgment on the Pleadings is **DENIED**, and the case is remanded for further proceedings pursuant to 42 U.S.C. § 405(g).

The Clerk of Court is respectfully directed to close ECF 26.


**SO ORDERED.**

Dated: November 10, 2022
       New York, New York

_s/ Ona T. Wang_

**Ona T. Wang**
United States Magistrate Judge

---

[3] For example, Exhibit 9F states that Plaintiff's attitude was tense, her mood was anxious, and that her memory was impaired. (R. 342). Further in, the evaluation shows Plaintiff's mood was "anxious and fidgety" and that her speech had "some stuttering when . . . nervous." (R. 354). Within the clinical formulation and recommendations, Plaintiff exhibited "symptomatology consistent with PTSD or an anxiety disorder" (R. 347) and noted under "Problem #1" is that Plaintiff "suffers from anxiety such as agitation, irritability, insomnia, depression, as well as PTSD symptoms which are distressing and unpredictable to her" (R. 350). Under "Problem #2", Plaintiff's anxiety "prevents her from using public transportation and going outside of her home." (R. 350).